UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL HOUGH,

        Petitioner,

Case No.16-12238

v.

HON. AVERN COHN

DUNCAN MACLAREN,

        Respondent.

_____/

**MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Carl Hough, (Petitioner), is currently on parole supervision through the Michigan Department of Corrections.[1] In 2006, Petitioner was convicted of operating a motor vehicle while intoxicated and causing a serious impairment of another person's body function (OWI), M.C.L. § 257.625(5), driving without a valid license and causing a serious impairment of another person's body function, M.C.L. § 257.904(5), ten counts of false certification under Michigan's vehicle code, M.C.L. § 257.903(1), one count of false representation, M.C.L. § 28.293(1), felon in possession of a firearm, M.C.L. § 750.224f, and possession of a firearm during the commission of a felony, M.C.L. § 750.227b. In 2010,[2] Petitioner

---

[1] Petitioner was paroled on October 27, 2016. See https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=627451.

[2] Petitioner did not appear for the final day of trial. He was apprehended four years later in Georgia following a traffic stop.

was sentenced as a third habitual offender to concurrent terms of 3 to 10 years, 2-5 years, all of which were consecutive to a 2 year sentence for the felony firearm conviction.

Before the Court is Petitioner's pro se petition for a writ of habeas corpus, claiming that his constitutional rights have been violated. He raises eleven claims. Respondent, through the Attorney General's Office, filed a response, arguing that petitioner's claims are meritless or procedurally defaulted. For the reasons that follow, the petition will be denied.

## II.  Background

### A.  Procedural History

Following his sentencing, Petitioner filed an appeal of right, in which he raised what now make up the first seven claims in his petition. The Michigan Court of Appeals affirmed his conviction and sentence. People v. Hough, No. 302132, 2013 WL 163820 (Mich. Ct. App. Jan. 15, 2013)(Shapiro, J., dissenting).[3]  Petitioner filed an application for leave to appeal to the Michigan Supreme Court. None of the justices voted to grant leave. People v. Hough, 495 Mich. 934 (2014).

Petitioner then filed a post-conviction motion for relief from judgment, raising what now make up his eighth through eleventh claims. The trial court denied the motion. People v. Hough, No. 06-008265-01 (Wayne Cty. Cir.Ct. Mar. 17, 2015). The Michigan appellate courts denied leave to appeal. People v. Hough, No. 327702 (Mich.

---

[3]Judge Shapiro dissented on Petitioner's claim that the trial court improperly reopened the proofs after the jury had been instructed and begun deliberations. This forms Petitioner's first claim on habeas review.

Ct. App. July 9, 2015); lv. den. 499 Mich. 926 (2016).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court abused its discretion when it reopened the proofs to allow the jury to view a forced showing of petitioner's scars, especially when the showing entailed more view than was originally shown to the jury during trial.

II. The prosecutor committed misconduct when he submitted the verbatim contents of the police report into the record and expanded on the report beyond that provided at trial during closing argument.

III. Petitioner allegedly caused a serious car accident and separately possessed fraudulent Secretary of State documents and some guns in a house while being a felon. The events were unrelated under Michigan law and it was prejudicial error and a denial of due process to join the two matters in one trial.

IV. Petitioner was denied his due process right to a fair trial when the prosecutor asked about "suspected marijuana" that was allegedly seized during the execution of the search warrant but destroyed by the police, mentioning the suspected marijuana in closing, and insinuating to the jury that the guns seized were not for hunting but for a criminal purpose.

V. Petitioner was denied the effective assistance of his attorney where his counsel failed to object to the prosecutor misconduct referenced in the previous issue.

VI. The evidence was insufficient to support the felony-firearm conviction, because the Legislature did not intend for felon-in-possession to be used as the basis of a felony-firearm conviction.

VII. The seizure of the guns exceeded the scope of the search warrant and was not justified by the plain view exception because the guns were not immediately and apparently illegal, thus violating petitioner's Fourth Amendment rights.

VIII. Petitioner is entitled to relief from the judgment of his conviction[s] because the trial court erred in allowing the jury during its deliberations to consider extrinsic information depriving petitioner of his right to a fair trial, also denying petitioner of his Fifth Amendment right to be free from self-incrimination, and his Sixth Amendment right of confrontation, of cross-examination.

IX. Petitioner is entitled to relief from judgment on his conviction[s] because

he was denied effective assistance of counsel.

X. Petitioner is entitled to relief from judgment of his conviction[s] because his due process right to a fair trial was violated by the prosecutor's untimely disclosure of Brady material.

XI. Petitioner is entitled to relief from judgment of his convictions, due to vindictive prosecution, selective prosecution, prosecutorial delay, and due process violations.

## B. Facts

The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> This case arose out of a traffic accident that occurred in 2004. Detroit Police Officer Mitchell Quinn responded to the scene of the accident to discover two people trapped inside a car that had crashed into a utility pole; the "entire front end of the car was smashed." Quinn identified defendant as the driver. At the hospital, defendant identified himself to Quinn as Lashawn Scott Key and indicated that "he had left the bar," passed out while driving, and "didn't know what happened." Quinn recalled that defendant smelled of alcohol, had bloodshot eyes and spoke in a slurred manner. Quinn left the hospital to acquire a "search warrant to get blood drawn" from defendant, but on Quinn's return defendant "had checked himself out of the hospital." Quinn performed a search for records of "Lashawn Scott Key" and found that "Key's" driving record "showed an individual ... in his late 30's that obtained a driver's license somewhere in his early 30's," when most Michigan residents acquired driver's licenses at age 16. Quinn deemed this a "red flag" that "didn't make any sense," and "the further I got to digging into it the more things began to unravel that the person that identified himself as Lashawn Scott Key was not Lashawn Scott Key." Quinn's further investigations, which included photographs from the Secretary of State and the LEIN network, a birth certificate, and conversing with defendant, eventually resulted in defendant providing Quinn with his real name.
>
> Quinn determined that multiple vehicles and driver's licenses began all pointing to a single address where defendant lived. Quinn executed a search warrant at that residence, looking for "fraudulently obtained identification cards, driver's licenses, any paper work and/or vehicles." He found mail in both defendant's name and the name of Lashawn Scott Key, including a hospital bill addressed to Key, two rifles, and several boxes of ammunition.

4

There were items of mail addressed to other names, as well. Defendant met with Quinn later that day, offering to turn himself in; he admitted that he acquired the guns for protection and got the driver's licenses to drive, and he wanted to be done with "these games." Quinn also noted that he did not need defendant to have admitted to being Lashawn Scott Key because he had "certified documents from the Secretary of State to prove who he is." The photographs on several driver's license or state identification cards, including defendant's and one for Lashawn Scott Key, were all determined to be of the same person.

Another of those items of proof was a LEIN entry indicating that defendant had noticeable scarring to his upper chest. Apparently—the testimony is not completely clear as to how—Quinn and several other officers personally verified that defendant did in fact have the described scarring, which Quinn described as "appear[ing] to be some sort of bullet wound." At trial, during Quinn's cross-examination, defense counsel had defendant lift up his shirt, which revealed no scarring on defendant's chest. The jury was provided with a copy of defendant's medical records from his treatment a t the hospital after the accident. We have unfortunately not had the benefit of receiving a copy of the trial exhibits, and no clear description was provided on the record, but we infer that those records apparently indicated that defendant had some kind of prior scarring somewhere on his upper torso area. After the close of proofs and during jury deliberations, the jury sent a note asking to see the lacerations. Rather than ordering defendant to lift his shirt again, the trial court ordered defendant to remove his shirt entirely, revealing scarring to, apparently, defendant's upper left arm.

People v. Hough, 2013 WL 163820, at * 1–2 (internal footnote omitted).

### III. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the

5

evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. See Woods v. Etherton, 136 S. Ct. 1149, 1152 (2016).

### IV.  Petitioner's Claims

### A.  Reopening of Proofs

Petitioner first claims that the trial court improperly reopened the proofs when he directed Petitioner to remove his shirt after the jury began its deliberations.  The court of appeals rejected this claim.  This claim is not cognizable on habeas review as explained below.

Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000); see also Spalla v. Foltz, 615 F. Supp. 224, 234 (E.D. Mich. 1985).  The Supreme Court has yet to decide whether or under what circumstances it is permissible for the reopening of proofs in a criminal case.  Given the lack of precedent by the Supreme Court on the issue of whether a state trial judge can reopen proofs in a criminal case, the Michigan courts' rejection of petitioner's claim was not an unreasonable application of clearly established federal law, so as to entitle petitioner to habeas relief.  See Wright v. Van Patten, 552 U.S. 120, 126 (2008). Moreover, the Sixth Circuit has never granted habeas relief because a prosecutor was permitted to reopen proofs in a criminal case. See Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994)(permitting prosecution to reopen case to present witness after court determined that testimony did not warrant Fifth Amendment protection did not violate due process or entitle defendant to federal habeas court relief.  Because the issue is one of state law and one in which there is an absence of any clearly established Supreme Court precedent barring the reopening of proofs in a criminal case, Petitioner

is not entitled to habeas relief on his first claim.

## B. Prosecutorial misconduct/ineffective assistance of counsel

In his second and fourth claims, Petitioner says that he was denied a fair trial because of prosecutorial misconduct. In his related fifth claim, Petitioner argues that counsel was ineffective for failing to object to the misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." Millender v. Adams, 376 F.3d 520, 528 (6th Cir. 2004)(citing Bowling v. Parker, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. Donnelly v. DeChristoforo, 416 U.S. at 643-45. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012)(quoting Harrington, 562 U.S. at 103).

In his second claim, Petitioner says that Officer Quinn was permitted to read verbatim to the jury the statement that Petitioner gave to Officer Quinn. Although Petitioner has framed his claim as a prosecutorial-misconduct challenge, "it amounts in the end to a challenge to the trial court's decision to allow the introduction of this

evidence." Webb v. Mitchell, 586 F. 3d 383, 397 (6th Cir. 2009). Contrary to Petitioner's assertion, his statements to Officer Quinn were not hearsay; the Michigan Court of Appeals concluded that they were admissible as a party admission under M.R.E. 801(d)(2)(A). Hough, 2013 WL 163820, at * 2.

Moreover, the admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. See Byrd v. Tessmer, 82 F. App'x. 147, 150 (6th Cir. 2003); see also Cathron v. Jones, 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). Thus, Petitioner is not entitled to relief regarding Officer Quinn's reading Petitioner's statement.

Petitioner also says that the prosecutor injected facts that had not been introduced in the record when he expanded on the contents of the police report in his closing argument as follows:

> "Mr. Hough continued, 'I don't know why you are playing games with me. I just want this over. What do I have to do to get this over with? Yes, I got those driver's license[s], but I need to drive and that's why I did it.'"

(Tr. 11/1/06, p. 90).
Petitioner contends that this statement was improper because there was no mention of any driver's license violations in petitioner's statement to Officer Quinn.

It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. Byrd v. Collins, 209 F.3d 486, 535 (6th Cir. 2000). A review of Officer Quinn's testimony, however, shows that he testified that Petitioner had admitted possessing the false driver's licenses in order to be able to drive. (Tr. 10/31/06, p. 34). The prosecutor therefore did not inject any facts into his closing argument that had not been introduced

9

in the record. Petitioner is not entitled to relief on this ground.

In his fourth claim, Petitioner contends that the prosecutor committed misconduct by referring to "suspected marijuana" that had been seized from his house, claiming that the evidence was irrelevant to the case and inadmissible. The court of appeals rejected this claim, noting that the brief reference, even if irrelevant, had no impact on the trial.

The Sixth Circuit has noted that there are no Supreme Court cases which support the proposition that a prosecutor's questions that simply call for answers that are inadmissible due to relevancy constitute prosecutorial misconduct that rises to the level of a federal due process violation. See Wade v. White, 120 F. App'x. 591, 594 (6th Cir. 2005). Therefore, the fact that the prosecutor introduced irrelevant evidence involving the alleged marijuana would not entitle petitioner to habeas relief. Id. Moreover, a prosecutor "does not commit misconduct by asking questions that elicit inadmissible evidence." Key v. Rapelje, 634 F. App'x. 141, 148 (6th Cir. 2015). Therefore, Petitioner is not entitled to relief on this ground.

Petitioner further says that the prosecutor improperly argued facts not in evidence when he said:

> "Same exact house where all these magazine clips were found for those guns. I don't know how many of you are hunters. This is no hunting rifle."

> (Tr. 11/1/06, p. 74).

Petitioner contends that this argument was improper because there was no evidence that this rifle was not used for hunting.

In rejecting this claim, the Michigan Court of Appeals noted that Officer Quinn described the two guns as "assault rifle[s]." People v. Hough, 2013 WL 163820, at * 3.

This was a reasonable conclusion.  Although a prosecutor should refrain from arguing any purported facts which have not been introduced into evidence, prosecutors must be given leeway to argue reasonable inferences from the evidence.  Because there was some factual support for the prosecutor's argument that the rifle was not used for hunting, the remark did not deprive petitioner of a fair trial.

In his fifth claim, Petitioner contends that his defense counsel was ineffective for failing to object to the prosecutorial misconduct petitioner complains of in his fourth claim.  Because the Court has already determined that the prosecutor's comments did not deprive petitioner of a fundamentally fair trial, Petitioner cannot establish that he was prejudiced by counsel's failure to object to these remarks.  Habeas relief is not warranted.

### C.  Improper Joinder

In his third claim, Petitioner contends that his constitutional rights were violated when the trial court permitted joinder of the OWI and driving with a suspended license counts, which arose from the November 2004 accident, and the fraudulent document and firearm counts, which arose from Officer Quinn's February 2006 search of petitioner's home.

Improper joinder does not, by itself, violate the federal constitution. United States v. Lane, 474 U.S. 438, 446, n. 8 (1986).  The Supreme Court in Lane suggested in passing that misjoinder could rise " to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." Id.  The Sixth Circuit has noted that the language in Lane concerning a court's failure to sever criminal charges is simply dicta and thus not clearly established federal

11

law.  See Mayfield v. Morrow, 528 F. App'x. 538, 541-42 (6th Cir. 2013).  See also Collins v. Runnels, 603 F.3d 1127, 1132 (9th Cir. 2010); Rodriguez v. Jones, 625 F. Supp. 2d 552, 560-61 (E.D. Mich. 2009)(stating that it had "found no Supreme Court cases holding that a defendant in a criminal case has a constitutional right to a separate trial on each of the charges against him.")

Given the lack of holdings by the Supreme Court on the issue of whether a state court violates a habeas petitioner's due process rights by joining together unrelated criminal charges in a single trial, the Michigan Court of Appeals' rejection of the petitioner's improper joinder claim was not an unreasonable application of clearly established federal law.

Moreover, it was not fundamentally unfair to join the different charges against Petitioner in a single trial because " joinder was an efficient use of resources." Rodriguez v. Jones, 625 F. Supp. 2d at 561.  As the Michigan Court of Appeals noted in rejecting this claim, all of the charges arose from "a series of connected acts." People v. Hough, 2013 WL 163820, at * 4 (citing M.C.R. 6.120(B)(1)(b)).  Moreover, the trial court gave the jurors a cautionary instruction, which advised them that they "must treat each count separately in light of the evidence presented" and further that they "may find the Defendant guilty of all fifteen, not guilty of all fifteen, or guilty and not guilty of any combination of the various crimes that you deem fit under the evidence." (Tr. 11/1/06, p. 117).  The trial court's cautionary instruction adequately cured any possible prejudice from the joinder of the separate charges at one trial. United States v. Jacobs, 244 F.3d 503, 507 (6th Cir. 2001).  Overall, Petitioner is not entitled to habeas relief on his claim.

### D.  Sufficiency of the Evidence

12

In this sixth claim, Petitioner contends that there was insufficient evidence to support his felony-firearm conviction because the Michigan Legislature did not intend for the offense of felon in possession of a firearm to be used as a predicate felony offense for felony-firearm.  Petitioner relies on the fact that certain firearms offenses are expressly exempted in Michigan's felony-firearm statute from being predicate offenses for this charge, therefore, the Legislature by implication intended that a felon in possession of a firearm charge cannot be the basis of a felony-firearm conviction.

Here, the Michigan Court of Appeals rejected Petitioner's claim, albeit by interpreting it as a Double Jeopardy claim.  In so ruling, the Michigan Court of Appeals pointed to the Michigan Supreme Court's holding in People v. Calloway, 469 Mich. 448, 452; 671 NW2d 733 (2003), in which that court held that there was no violation of the Double Jeopardy Clause to predicate a felony-firearm conviction on a felon-in-possession of a firearm charge. Hough, 2013 WL 163820, at * 5.

The Michigan Supreme Court has held that "the [Michigan] Legislature's intent in drafting the felony-firearm statute was to provide for an additional felony charge and sentence whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute." People v. Mitchell, 456 Mich. 693, 698 (1998).  The Michigan Supreme Court subsequently held that "[b]ecause the felon in possession charge is not one of the felony exceptions in the [felony-firearm] statute, it is clear that defendant could constitutionally be given cumulative punishments when charged and convicted of both felon in possession, MCL § 750.224f, and felony-firearm, MCL § 750.227b." People v. Calloway, 469 Mich. at 452.

The Supreme Court has "repeatedly held that a state court's interpretation of

13

state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." Mullaney v. Wilbur, 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. See Sanford v. Yukins, 288 F.3d 855, 862 (6th Cir. 2002). Moreover, a federal court on habeas review must distinguish a sufficiency of evidence claim from state law claims which are disguised as Jackson claims. Id. (citing Bates v. McCaughtry, 934 F.2d 99, 103 (7th Cir. 1991)). Thus, "when a habeas petition is predicated upon just one of several plausible interpretations of underlying state law, federal courts have declined to review state convictions on insufficiency-of-evidence grounds." Jenkins v. Dailey, 348 F. App'x 114, 119 (6th Cir. 2009). This Court must defer to the Michigan appellate courts' construction of the elements of state crimes. See Coe v. Bell, 161 F.3d 320, 347 (6th Cir. 1998).

The Court must defer to the state courts' interpretation of the felony-firearm statute. Petitioner is therefore not entitled to relief on his sixth claim.

### E. Fourth Amendment Claim

In his seventh claim, Petitioner says that the trial court erred in denying his motion to suppress the evidence obtained from his house as being the fruit of an illegal search. Petitioner is not entitled to relief on this claim, as explained below.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. Stone v. Powell, 428 U.S. 465, 494-95 (1976); Machacek v.

Hofbauer, 213 F.3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. Riley v. Gray, 674 F. 2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. See Wynne v. Renico, 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); rev'd on other grds 606 F.3d 867 (6th Cir. 2010).

Here, Petitioner was able to present his Fourth Amendment claim to the state trial court in his pre-trial motion to suppress. Petitioner was later able to present his Fourth Amendment claim to the Michigan appellate courts. This is sufficient to preclude review of the claim.

### F. Procedural Default

Respondent contends that Petitioner's remaining claims, claims eight to eleven, are procedurally defaulted because he raised them for the first time on post-conviction review and failed to establish cause and prejudice, as required by M.C.R. 6.508(D)(3) for failing to raise these claims on his direct appeal. The Court agrees.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his or her procedural default, it is unnecessary for the court to reach the

prejudice issue. Smith v. Murray, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. Murray v. Carrier, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. Schlup v. Delo, 513 U.S. 298, 324 (1995).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(I).

The Supreme Court noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v.

Nunnemaker, 501 U.S. 797, 803 (1991).

Here, the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." This order, however, did not refer to subsection (D)(3) nor did it mention petitioner's failure to raise his eighth through eleventh claims on his direct appeal as a rationale for rejecting his post-conviction claims. Because the Michigan Supreme Court form order in this case citing Rule 6.508(D) is ambiguous as to whether it refers to procedural default or a denial of post-conviction relief on the merits, the order is unexplained. See Guilmette v. Howes, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. Id.

The Michigan Court of Appeals denied petitioner's post-conviction appeal holding that "The defendant alleges grounds for relief that could have been raised previously and he has failed to establish both good cause for failing to previously raise the issues and actual prejudice from the irregularities alleged, and had not established that good cause should be waived. MCR 6.508(D)(3)(a) and (b)." People v. Hough, No. 327702 (Mich.Ct.App. July 9, 2015). The Michigan Court of Appeals clearly denied Petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), thus, petitioner's post-conviction claims are procedurally defaulted pursuant to M.C.R. 6.508(D)(3). See Ivory v. Jackson, 509 F.3d 284, 292-93 (6th Cir. 2007). As such, his claims are defaulted.

Petitioner, however, alleges ineffective assistance of appellate counsel as cause

to excuse his procedural default for failing to raise his eighth through eleventh claims on his appeal of right.[4]

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."
>
> Id. at 463 U.S. at 754.

The Supreme Court has subsequently noted that:

> Notwithstanding Barnes, it is still possible to bring an [ineffective assistance of counsel] claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent."

Smith v. Robbins, 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." Smith v. Murray, 477 U.S. at 536 (quoting Barnes, 463 U.S. at 751-52).

---

[4] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. See Guilmette, 624 F. 3d at 291.  However, for the reasons stated below, Petitioner is not entitled to habeas relief on this claim.

Applying this standard, Petitioner fails to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting his eighth through eleventh claims.

Petitioner's original appellate counsel, filed a seventeen page brief containing the first two claims raised by petitioner in his habeas petition.  See Defendant's Brief on Appeal. (Doc. 10-14).  Petitioner's substitute appellate counsel, filed a twenty four page brief on appeal raising the third through seventh claims raised by petitioner in his habeas application. See Appellant's Supplemental Brief. (Doc. 10-14).  Petitioner has not shown that appellate counsels' strategy in presenting these claims and not raising other claims was deficient or unreasonable.  Moreover, for the reasons stated by the Michigan Attorney General in the answer to the petition for writ of habeas corpus, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners."  As such, Petitioner has not established cause for his procedural default of failing to raise these claims on direct review.  Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue.

In addition, because these post-conviction claims lack merit, Petitioner cannot prevail on an independent ineffective assistance of appellate counsel claim raised by petitioner.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" Shaneberger v. Jones, 615 F.3d 448, 452 (6th Cir. 2010)(quoting Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001)).  Finally, Petitioner has not established that a fundamental miscarriage of justice has occurred.

Overall, Petitioner's remaining claims are barred by procedural default and do not warrant relief.

## V. Conclusion

For the reasons stated above, the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus is **DENIED.**

Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore **DECLINES** to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2). See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

SO ORDERED.

                                    S/Avern Cohn
                                    AVERN COHN
                                    UNITED STATES DISTRICT JUDGE

Dated: Februray 24, 2017
       Detroit, Michigan